IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-2727-WJM-NYW

KENT D. BAUMGARDNER,

    Plaintiff,

v.

PATRICK S. CANNON and
WESTERN REFRACTORY CONSTRUCTION, INC.,

    Defendants.

## ORDER ON PENDING MOTIONS

Plaintiff Kent Baumgardner ("Plaintiff") sues Defendant Western Refractory Construction, Inc. ("Western Refractory") and its president, Defendant Patrick S. Cannon ("Cannon"; together with Western Refractory, "Defendants"), for breach of contract, breach of fiduciary duty, and fraud under Colorado state law. Each of these causes of action flows from Plaintiff's allegation that he was not paid the full amounts Defendants owed him under a "Phantom Stock Unit Agreement" ("Agreement").

Plaintiff originally filed this lawsuit in Colorado state court. (*See* ECF No. 1-1.) Defendants removed to this Court under 28 U.S.C. §§ 1332(a)(1) and 1441(b). (ECF No. 1.) Defendants then filed their Motion to Dismiss, arguing that the Agreement is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and that ERISA preempts Plaintiff's state-law causes of action. (*See* ECF No. 9.) In the middle of briefing on that motion, Plaintiff filed an amended complaint (ECF No. 17) but the parties stipulated that Defendants' Motion to Dismiss

may be treated as if filed against the amended complaint (*see* ECF No. 20). Moreover, after the parties finished briefing the Motion to Dismiss, Plaintiff filed a Motion for Leave to File Second Amended Complaint and Jury Demand ("Motion to Amend"). (ECF No. 57.)

The Motion to Dismiss and the Motion to Amend are both ripe for ruling. For the reasons explained below, the Court finds that Plaintiff's currently operative complaint (the first amended complaint) plausibly pleads that the Agreement is not governed by ERISA. The Court therefore denies Defendants' Motion to Dismiss. As for the Motion to Amend, it seeks to add an ERISA cause of action in the alternative, and a request for exemplary damages. The Court grants the Motion to Amend as to the first request, but denies it without prejudice as to the second.

## I. LEGAL STANDARD

### A. General Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169,

1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

**B.    Documents Outside the Pleadings**

Defendants ask the Court to consider the Agreement as part of the Rule 12(b)(6) analysis, although the Agreement was not attached to the complaint. (*See* ECF No. 9 at 4 n.2; ECF No. 9-1.) The Court may consider a document outside the pleadings even in a Rule 12(b)(6) analysis if the document is (1) "mentioned in the complaint," (2) "central to [the] claims [at issue]," and (3) not challenged as inauthentic. *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013).[1]

Here, the Agreement is repeatedly "mentioned in the complaint" by name. (ECF No. 17 ¶¶ 8–11.) The Agreement is also "central" because the complaint alleges that Defendants breached the Agreement. (*Id.* ¶¶ 12–25.) Finally, Plaintiff does not challenge as inauthentic the copy of the Agreement that Defendants attached to their Motion to Dismiss. Thus, the Court may consider the Agreement while remaining within the restraints of a proper Rule 12(b)(6) analysis.

## II. FACTS

Plaintiff is an Alaska resident. (ECF No. 17 ¶ 1.) Defendant Cannon is a

---

[1] "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997); *see also Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 923 (N.D. Ill. 1999) ("it would be totally wasteful to uphold a claim on the false premise created by less than complete documentation when the delayed consideration of the remaining documents would lead to dismissal of that claim").

Colorado resident. (*Id.* ¶ 3.) Defendant Western Refractory is a Colorado corporation with its principal place of business in Colorado. (*Id.* ¶ 2.)

Plaintiff has been working at Western Refractory since 1984. (*Id.* ¶ 6.) In 2005, Plaintiff and Western Refractory entered into the first version of the Agreement. (*Id.* ¶ 8.) In subsequent years, the parties amended and restated the Agreement several times. (*Id.* ¶¶ 9–11.) A version dating from August 2011 is the currently effective version. (*Id.* ¶ 11.)

The Agreement announces that it is "intended to provide for the payment of performance-based compensation to [Plaintiff] while he is an employee of the Company." (ECF No. 9-1, Recitals, ¶ B.) The Agreement provides that, prior to Plaintiff's termination or a change in control of the company, Plaintiff "will be paid an amount equal to 20% of Company's Adjusted Earnings (the 'Annual Bonus'). [This payment] will be paid in cash, in a lump sum no later than 2 1/2 months after the close of the Fiscal Year for which the payment is determined." (*Id.* § 5.1.) The Agreement also contains contingencies for handling Plaintiff's bonus if he is terminated for cause, terminated other than for cause, or if there is a change in control of the company. (*Id.* §§ 5.1(ii), 6.) The Agreement includes a noncompete covenant enforceable during the term of Plaintiff's employment and for two years after his termination, along with a separate contingency for handling bonus payments if Plaintiff is fired for violating the noncompete covenant. (*Id.* §§ 7, 8.)

Elsewhere in the Agreement, Plaintiff acknowledges that his annual bonuses "have been paid in full through December 31, 2010." (*Id.* § 14(a).)

Finally, the Agreement contains the following choice-of-law provision:

4

> This Agreement is subject to ERISA as this law applies to an unfunded plan or arrangement maintained by Company or an affiliate primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees. To the extent not preempted by ERISA, the laws of the State of Colorado shall govern this Agreement without regard to conflicts of laws principles.

(*Id.* § 16.)

Plaintiff alleges that, from 2005 until 2017, he received what he thought to be the appropriate Annual Bonus amount. (ECF No. 17 ¶ 15.) But, in January 2017, he learned that Cannon "had been usurping Western Refractory's profits and assets for his personal use without reimbursing Western Refractory, thereby[] artificially deflating the Adjusted Earnings of Western Refractory and reducing [Plaintiff's] Annual Bonus." (*Id.* ¶ 16.)

Plaintiff resigned from Western Refractory on March 31, 2017. (*Id.* ¶ 23.) He now brings claims for breach of contract, breach of fiduciary duty, and fraud. (*Id.* at 4–6.)

## III. ANALYSIS

### A. Whether the Agreement is an ERISA Plan

ERISA provides that "[a] civil action may be brought * * * by a participant or beneficiary * * * to recover benefits due to him under the terms of [a] plan [governed by ERISA], to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "[I]f an individual . . . [1] could have brought his claim under [this provision], and . . . [2] there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA[.]" *Aetna Health Inc. v. Davila*, 542

5

U.S. 200, 210 (2004); *see also* 29 U.S.C. § 1144(a) (with exceptions not relevant here, ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan").

Whether Plaintiff could have brought his claim under 29 U.S.C. § 1132(a)(1)(B) turns primarily on whether he is suing to enforce the terms of an ERISA-governed plan, otherwise known as an "employee benefit plan." *See* 29 U.S.C. § 1002(3). "The term 'employee benefit plan' or 'plan' means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." *Id.* No party argues that the Agreement establishes an employee welfare benefit plan, so the Court turns to the definition of "employee pension benefit plan":

> [T]he terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
>
> (i) provides retirement income to employees, or
>
> (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,
>
> regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

*Id.* § 1002(2)(A). This dispute turns on whether the Agreement fits either or both of the two indented, roman-numeraled clauses from the above definition.

Based on Agreement § 16's statement that the Agreement "is subject to ERISA as this law applies to an unfunded plan or arrangement maintained by Company or an

6

affiliate primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees," Defendants argue that the Agreement is a "top hat plan." (ECF No. 9 at 4.)

> A top hat plan is an unfunded plan the employer maintains "primarily for the purpose of providing deferred compensation to a select group of management or highly compensated employees." 29 U.S.C. §§ 1051(2), 1081(3), 1101(a). Thus, it is subject to ERISA's enforcement provisions even though it is exempted from ERISA's vesting, participation, funding, and fiduciary rules.

*Garratt v. Knowles*, 245 F.3d 941, 946 n.4 (7th Cir. 2001) (certain citations omitted). Plaintiff counters that the Agreement falls within the Department of Labor's regulatory guidance regarding purported ERISA plans that pay in-service bonus compensation:

> the terms "employee pension benefit plan" and "pension plan" shall not include payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees.

29 C.F.R. § 2510.3-2(c).

The Court concludes that Plaintiff has the better of this dispute, although the Court is unwilling to rule in this posture that the Agreement is exempted from ERISA as a matter of law. On the current record, and in the specific context of a motion brought pursuant to Rule 12(b)(6), the Court can only rule that Plaintiff plausibly states a claim that the Agreement falls outside ERISA.

The Agreement's primary focus is in-service bonus compensation, as emphasized by the explicit provision of an *annual* bonus payable two-and-a-half months after the close of each fiscal year. The Agreement also contains Plaintiff's representation that no outstanding annual bonus amounts remain due to him. And, the

7

Agreement contains a noncompete covenant. Again, all of this points strongly toward something other than deferred compensation.

Defendants emphasize that the Agreement contains many provisions about payment after termination or change of control. (ECF No. 36 at 3–5.) This is true, but these portions of the Agreement merely address contingencies that may arise. In no sense do they create a "systematic[] defer[al] [of compensation] to the termination of covered employment or beyond." 29 C.F.R. § 2510.3-2(c); *cf. Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 933 (8th Cir. 1999) (finding that phantom stock plan was not governed by ERISA: "While a participant may postpone his redemption of PSP shares until termination or retirement, this is strictly at the option of the participant, and there is nothing in the terms of the program that would result in such deferral with the purposeful consistency required to make deferral systematic."); *McKinsey v. Sentry Ins.*, 986 F.2d 401, 406 (10th Cir. 1993) ("Plaintiff argues that because a sales representative *can* defer payment of bonus and interest allocations until the termination of employment or to provide retirement income, the [contract in question] qualifies as an employee pension benefit plan . . . . We disagree. The plan permits a sales representative to withdraw the vested portion of her/his allocations at any time during the course of her/his employment; it does not provide for the *systematic* deferral of payment." (emphasis in original)); *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 574 (5th Cir. 1980) (in the employee welfare benefit context, stating that "[ERISA] does not embrace all plans that may incidentally result in the payment of benefits after death or disability but only plans established for the purpose of providing those benefits").

In truth, the only part of the Agreement that suggests ERISA applies is § 16's

bald announcement that the Agreement "is subject to ERISA as this law applies to an unfunded plan or arrangement maintained by Company or an affiliate primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." For two reasons, this is not enough to hold that ERISA governs the current dispute.

First, Defendants do not argue that a clause such as that contained in § 16 is outcome determinative. In other words, Defendants do not argue that an ERISA-governs-this-contract clause, without more, definitively establishes that ERISA indeed governs, even if the contract fails to establish the sort of relationship or plan that Congress sought to regulate through ERISA.

Second, § 16 is inconsistent with the announcement earlier in the Agreement that it is "intended to provide for the payment of performance-based compensation to [Plaintiff] *while he is an employee of the Company*." (ECF No. 9-1, Recitals, ¶ B (emphasis added).) It is also inconsistent with the Agreement's focus on annual bonuses rather than a post-termination income stream.

Colorado courts appear to treat inconsistency as a species of ambiguity. *See, e.g.*, *Dupre v. Allstate Ins. Co.*, 62 P.3d 1024, 1027–28 (Colo. App. 2002) ("Language is ambiguous if it is susceptible of more than one reasonable interpretation, and if the policy language is ambiguous or inconsistent, it must be construed against the insurer and in favor of coverage."). If inconsistency "appear[s] in the four corners of the document"—as it does in this case—then extrinsic evidence may be admitted as "an aid to ascertaining the intent of the parties." *Am. Family Mut. Ins. Co. v. Hansen*, 375 P.3d 115, 117 (Colo. 2016).

The Court finds that there is at least a fact question regarding the parties' intent when entering into the Agreement. Plaintiff has plausibly pleaded that the parties did not intend to establish the sort of plan Congress meant to regulate through ERISA. For that reason, the Court must deny Defendants' Motion to Dismiss.[2]

**B.    Motion to Amend**

Plaintiff's proposed second amended complaint adds two causes of action. Plaintiff proposes to add an ERISA claim for benefits under the Agreement, and a claim for exemplary (a.k.a. punitive) damages. As to the ERISA claim, amendment is appropriate as an alternative basis for recovery because—as explained immediately above—it may be that ERISA governs the Agreement.

The punitive damages claim is more complicated.[3] "A punitive damage[s] claim is not an independent cause of action . . . ." *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1554 (10th Cir. 1991). Momentarily setting that aside, Plaintiff seeks to add a request for punitive damages now (as opposed to including it in an earlier pleading) because Colorado law requires him to defer his request until after the initial pleading phase:

> A claim for exemplary damages in an action governed by
> this section may not be included in any initial claim for relief.
> A claim for exemplary damages in an action governed by
> this section may be allowed by amendment to the pleadings
> only after the exchange of initial disclosures pursuant to rule
> 26 of the Colorado rules of civil procedure and the plaintiff
> establishes prima facie proof of a triable issue.

---

[2] This is not to say that a jury must necessarily decide the intent of the parties when entering into the Agreement. If no reasonable jury could conclude that Plaintiff and Western Refractory intended to create the sort of deferred compensation plan that ERISA governs, then this matter may be amenable to summary judgment.

[3] Plaintiff seeks such damages only with respect to his Colorado state-law causes of action. (*See* ECF No. 65 at 2.)

Colo. Rev. Stat. § 13-21-102(1.5)(a).[4]  The "triable issue" for which the plaintiff must have prima facie proof is whether "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." *Id.* § 13-21-102(1)(a).

Plaintiff represents, and Defendants do not dispute, that the parties exchanged initial disclosures in January 2018. (ECF No. 57 ¶ 8.)  The question, then, is "prima facie proof of a triable issue."

> Prima facie proof of a triable issue of exemplary damages is established by a showing of a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution. Such proof may be established through discovery, by evidentiary means, or by an offer of proof. Prima facie evidence is evidence that, unless rebutted, is sufficient to establish a fact.

*Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007) (internal quotation marks and citations omitted).[5]

Plaintiff contends that the following allegations, contained in the body of his Motion to Amend, satisfy his obligation at this phase:

> Plaintiff has previously spoken with employees at Western Refractory who admitted that Mr. Cannon used company assets for his personal benefit, but they incorrectly assumed he was entitled to do so because it was "his company." Plaintiff's counsel have also spoken with a former

---

[4] This statute, although procedural in nature, applies in federal court when a party brings Colorado state-law claims.  Its reference to Colorado Rule of Civil Procedure 26 is treated as a reference to Federal Rule of Civil Procedure 26.  *See Am. Econ. Ins. Co. v. William Schoolcraft, M.D., P.C.*, 2007 WL 160951, at *2 (D. Colo. Jan. 17, 2007).

[5] In *Stamp*, the Colorado Supreme Court construed the state statute governing punitive damages in wrongful death cases, which is separate from the general punitive damages statute at issue here.  However, both statutes delay the claim for punitive damages until after exchange of initial disclosures, and both require the plaintiff to present "prima facie proof of a triable issue."  *Compare* Colo. Rev. Stat. § 13-21-102(1.5)(a) *with id.* § 13-21-203(3)(c)(I).  The Court can see no reason why the Colorado Supreme Court would construe the phrase "prima facie proof of a triable issue" differently as between the two statutes, and so this Court treats *Stamp*'s construction as applicable to both.

11

> bookkeeper at Western Refractory who regularly observed
> Mr. Cannon billing personal expenses to the company and
> failing to reimburse the company for those expenses, and
> using Western Refractory employees to perform work on his
> personal properties, while billing their time to the company.

(ECF No. 57 ¶ 9.)[6]

The Court agrees with Defendants that these assertions are too thin. They do not amount to "evidence that, unless rebutted, is sufficient to establish," *Stamp*, 172 P.3d at 449, whether "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct," Colo. Rev. Stat. § 13-21-102(1)(a). But discovery has been stayed pending the Court's resolution of the Motion to Dismiss (*see* ECF No. 63), and so an amended scheduling order will be needed in light of this outcome. Plaintiff therefore will likely have sufficient time to develop a fuller record and, if desired, file a new motion to amend which reasserts his claim for punitive damages. In any event, the portion of the current Motion to Amend seeking to add a request for punitive damages will be denied without prejudice.[7]

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

---

[6] Plaintiff submits an affidavit with his reply brief to back up what would otherwise be mere attorney argument. (*See* ECF No. 65-1.) In some situations, submitting an affidavit with a reply brief is impermissible because the defendant has not received an opportunity to respond to the affidavit. In this case, the Court finds that the affidavit provides materially the same information as the assertions made in the Motion to Amend, and so the fact that the affidavit was attached to the reply brief is harmless.

[7] Concerning the parties' forthcoming amended scheduling order, the Court strongly encourages the parties to agree on a new pleading amendment deadline that accounts for Plaintiff's intention to develop a prima facie case of punitive damages. The Court would prefer to avoid the complicated scenario presented when a party moves to amend after the deadline passes. *Cf. Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687–88 (D. Colo. 2000) (discussing the need to establish good cause under Rule 16(b) when seeking to amend a pleading after the scheduling order's deadline for such amendments has passed).

1. Defendants' Motion to Dismiss (ECF No. 9) is DENIED;

2. Plaintiff's Motion for Leave to File Second Amended Complaint and Jury Demand (ECF No. 57) is GRANTED with respect to Plaintiff's proposed ERISA cause of action, but otherwise DENIED WITHOUT PREJUDICE;

3. Plaintiff shall file his second amended complaint which reflects the Court's rulings in this Order by no later than **June 15, 2018**;

4. The stay of discovery previously entered (*see* ECF No. 63) is LIFTED; and

5. On or before **June 11, 2018,** the parties shall jointly contact the chambers of U.S. Magistrate Judge Nina Y. Wang to begin the process of developing an amended scheduling order which shall be prepared in a manner also consistent with this Order.

Dated this 6th day of June, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge